# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| In the Matter of the Arbitration between ) <br> ) <br> **MWN GROUP, INC.,** ) <br> ) <br>     Petitioner, ) <br> ) <br> v. ) <br> ) <br> **MAG USA, INC.,** ) <br> ) <br>     Respondent. ) | No. 3:06-MC-47 <br> (Phillips) |

## AMENDED MEMORANDUM OPINION

This Amended Memorandum Opinion shall supercede the court's memorandum opinion filed August 8, 2007 [Doc. 12].

Petitioner, MWN Group, Inc., moves the court for an order, pursuant to Tenn. Code Ann. § 29-5-301 *et seq*, or alternatively, §§ 9 and 13 of the Federal Arbitration Act, confirming the Final Award of the arbitrator in favor of MWN Group in the matter of the arbitration between MWN Group and MAG USA, made on June 12, 2006.

## Background

On July 30, 2002, the parties entered into a Representative Agreement in writing whereby MWN agreed to represent MAG as an independent manufacturer's sales

representative, and MAG agreed to pay MWN commissions on sales in accordance with the terms of the Agreement. Paragraph 16 of the Agreement contained an arbitration clause, which stated:

> MAG USA and the Representative [MWN} shall work together in good faith to amicably settle any disputes which may arise in connection with this Agreement. In the event the parties to this Agreement fail to reach an amicable resolution for any disputes, the parties agree to seek resolution by arbitration under the Rules of Conciliation and Arbitration of the International Chamber of Commerce. Such arbitration shall be conducted at Knoxville, Tennessee and the language shall be English.

In November 2003, a dispute arose between MWN and MAG whereby MWN claimed MAG breached the contract by unlawfully and prematurely terminating it prior to the expiration date of April 14, 2006. MWN alleges that MAG failed to pay required pre- and post-termination commissions as called for in § 6 of the Agreement. In accordance with the arbitration clause of the Agreement, the parties submitted the dispute to arbitration pursuant to the Rules of the International Chamber of Commerce (ICC) in Knoxville, Tennessee. The ICC appointed William P. Alexander III as the sole arbitrator to determine all issues in accordance with the arbitration clause in Paragraph 16 of the Agreement, and pursuant to the ICC rules, the parties agreed to the terms of reference for the arbitration proceedings.

As part of the arbitration proceeding, the parties engaged in discovery, submitted briefs, and attended hearings at which both parties presented testimonial and

documentary evidence for the arbitrator's consideration.  The hearings were held January 9, 2006 through January 12, 2006, in Knoxville, Tennessee, and after considering all the evidence, the arbitrator made his Final Award in writing.  The arbitrator found that MAG terminated the parties' contract without cause, and awarded damages as follows: (1) MWN shall pay MAG $37,301 for MWN's filing suit in Michigan rather than instituting arbitration proceedings, with interest thereon at an annual rate of 10% from January 13, 2005 until the date of actual payment; (2) MWN shall pay MAG $1 as moral damages for failure of MWN to return proprietary information, with interest thereon at an annual rate of 10% from January 13, 2005 until the date of actual payment; (3) MAG shall pay MWN $2,285,128 for commissions due upon improper termination of the Agreement, with interest thereon at an annual rate of 10% from October 6, 2004, until the actual date of payment; (4) MAG shall pay to MWN $54,381 representing a portion of the costs of arbitration, with interest thereon at an annual rate of 10% from June 12, 2006 until the actual date of payment; and (5) MAG shall pay to MWN $135,608.92 for 50% of MWN's attorney fees and costs, with interest thereon at an annual rate of 10% from June 12, 2006 until the actual date of payment.

On July 11, 2006, MAG filed an application for correction and interpretation of the Award with the ICC pursuant to Article 29(2) of the Rules.  On August 11, 2006, the arbitrator issued his decision on MAG's application for correction which left the Award fully intact.  MAG has no further recourse under the ICC rules.

MWN avers that confirmation of the Award is proper pursuant to Tenn. Code Ann. § 29-5-312. The parties' consent to the entry of judgment on the Award is mandatory pursuant to the statute, and is consistent with the arbitration clause in the Agreement. Alternatively, MWN avers confirmation is proper under the Federal Arbitration Act (FAA) because the Agreement evidences a transaction involving commerce within the meaning of §§ 1 and 2 of the FAA. Therefore, MWN moves the court for an order confirming the Award of the arbitrator, directing that judgment be entered thereon.

MAG opposes the confirmation of the arbitration award, arguing that the Award is in clear and manifest disregard of the law. Specifically, MAG alleges that the arbitrator awarded MWN its gross commissions in full, failing to offset those commissions by $450,000 in annual logistics costs or $164,000 in annual MWN cost savings that MWN would have incurred to perform its part of the contract.

## Analysis

Upon application of a party to the arbitration to confirm the award, Tenn. Code Ann. § 29-5-312 provides that "the court shall confirm an award, unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 29-5-313 and 314." It is well settled that when the parties agree to arbitrate, they are bound by the terms of that arbitration provision. *International Talent Group, Inc., v. Copyright management Inc.,* 769 S.W.2d 217, 218 (Tenn.App. 1989).

In the June 12, 2006 arbitration award, the arbitrator awarded MWN $2,385,128 in future commissions. As noted by the parties, the arbitrator awarded MWN its gross commissions in full, and he refused to offset those commissions by the $450,000 in annual logistics costs or the $164,000 in annual MWN costs savings that MWN would have incurred to perform its part of the contract. The Award states as follows:

> XI. Post Termination Expenses for Logistics Services and Warehousing Services of up to $450,000 per year
>
> 66. Prior to the amendment of the Agreement, [MWN] had an obligation to provide logistics and warehousing services to [MAG] that formed at least some basis for the commission rates under the [Representative] Agreement. Going forward after the amendment to the Agreement, [MWN] gave up providing those services and agreed to pay [MAG] approximately $450,000 per year . . . in return for [MAG's] assuming the provision of those services. [MAG] argued the amendment to the Agreement, in effect, revised the real commission rates downward. [MAG] also argued any commission payments awarded in this Arbitration should be reduced by a credit for the logistics payments.
>
> 67. [MWN] argued the commission payments must have no such reduction because prior to amendment of the Agreement [MWN] had no continuing obligation to provide those services after termination of the Agreement. I agree. [MWN] further argued it has no such obligation after the amendment because the amendment reiterates the obligation to make such payments is limited to the term of the Agreement. The amendment to the Agreement added a new Section 3(1) to the Agreement. Section 3(1) reads in relevant part:
>
> ". . . [MWN] shall pay [MAG] for the duration of the agreement . . . payment . . . by [MWN] to [MAG] shall be effected by way of deduction by [MAG] of the sums stipulated . . . from monthly commissions due to [MWN] under the agreement."

68. I agree with [MWN]. The [Representative] Amendment and its amendment provide for a continuing obligation for [MWN] to provide or make payment for logistics services only for the duration of the Agreement. Upon a Section 6b2 termination of the Agreement, commissions must be paid at the "full rate," i.e., with no reductions. [MAG] has no right to any post termination setoff of approximately $37,500 per month at the rate of approximately $450,000 per year.

XII. Post Termination Expenses for Cost Saving of an Estimated $164,000 per Year

69. Similar reasoning applies to Respondent [MAG's] claim for post termination expenses for cost saving of $164,000 per year. I find the [Representative] Agreement contains no provision for [MWN] to bear any such expense after termination of the Agreement. Respondent has no right to any post termination setoff of $164,00 per year.

On August 11, 2006, the arbitrator refused to make any changes to his June 12, 2006 Award. He ruled that: "The Final Award, regarding the questions raised by Respondent [MAG] in its application, contained no errors in computation requiring correction and requires no interpretation as it is quite clear regarding future commissions."

MAG argues that the arbitrator awarded MWN more in profits than it would have attained had the contract been fully performed. MAG contends that MWN is not entitled to receive all performance it would have received had the contract not been terminated, while not paying the costs it was contractually obligated to incur to perform the contract.

Under the FAA, an arbitration award can be vacated for one of four reasons: (1) where the award was procured by corruption, fraud or undue means; (2) where there was evidence of partiality or corruption in the arbitrator; (3) where the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights or any party have been prejudiced; or (4) where the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. MAG has not shown the arbitrator's decision to be erroneous under any of these four tests. Instead, MAG argues that there is another, judicially-created, ground for vacating the arbitrator's award: a federal court can vacate an arbitration award that is made in "manifest disregard of the law." *See Henson v. Morgan Stanley DW, Inc.,* 2005 WL 1806426 at *3 (M.D.Tenn. 2005). An arbitrator acts in manifest disregard of the law if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate, and (2) the arbitrator refused to heed that legal principle." *Id.* To be vacated, an arbitrator's decision "must fly in the face of clearly established legal precedent." *Merrill Lynch v. Jaros,* 70 F.3d 418, 421 (6th cir. 1995).

MAG urges the court to recalculate the Award by offsetting the $2,385,128 in commissions by $450,000/year in logistics costs and $164,000/year in MWN cost savings, which would reduce the commissions portion of the Award to $236,128, which MAG argues should be further reduced to net present value as of June 12, 2006, the date

or the award, and not subject to any prejudgment interest. The court finds MAG's argument without merit.

First, had the Agreement been honored and not breached by MAG, it would have continued through April 14, 2006 (Agreement § 5) with MWN netting additional profits through that date of over $480,000 even with the deduction of the logistics services and other costs. Secondly, MWN would have been entitled to post termination commissions starting April 15, 2006 for five years from the start of production of the relevant products at the full commission rate and with no obligation for payment of logistic services or any other expense setoffs (Agreement § 6.b.2). The arbitrator found that the Agreement was terminated by MAG without cause on November 4, 2003, thereby ending, as of that date, any obligation for logistic expense setoff and ending any other MWN expenses. Post-termination commissions to MWN commenced as of November 4, 2003 under § 6.b.2 of the Agreement. There was no expression of intent for MWN to bear any costs in order for it to be entitled to obtain the bargained for and stated post-termination commissions as set forth in the Agreement. MAG is merely re-arguing its case presented before the arbitrator. An examination of the Award shows the arbitrator fully evaluated the parties' evidence and arguments, and correctly evaluated the applicable facts and law. Accordingly, the arbitrator's Award is hereby **AFFIRMED**, and judgment will issue for the amounts listed in the Award.

## Conclusion

For the reasons stated above, the petition for order affirming final arbitration award [Doc. 1] filed by MWN Group, Inc., is **GRANTED,** whereby the following damages are awarded: (1) MWN shall pay MAG $37,301 for MWN's filing suit in Michigan rather than instituting arbitration proceedings, with interest thereon at an annual rate of 10% from January 13, 2005 until the date of actual payment; (2) MWN shall pay MAG $1 as moral damages for failure of MWN to return proprietary information, with interest thereon at an annual rate of 10% from January 13, 2005 until the date of actual payment; (3) MAG shall pay MWN $2,285,128 for commissions due upon improper termination of the Agreement, with interest thereon at an annual rate of 10% from October 6, 2004, until the actual date of payment; (4) MAG shall pay to MWN $54,381 representing a portion of the costs of arbitration, with interest thereon at an annual rate of 10% from June 12, 2006 until the actual date of payment; and (5) MAG shall pay to MWN $135,608.92 for 50% of MWN's attorney fees and costs, with interest thereon at an annual rate of 10% from June 12, 2006 until the actual date of payment.

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge